UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDREW DEAN and AARON HOROWITZ,

                Plaintiffs,

        v.

CITY OF BUFFALO, et al.,

                Defendants.

_____

<u>DECISION & ORDER</u>

02-CV-6029P

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs Andrew Dean ("Dean") and Aaron Horowitz ("Horowitz") initiated this

action on January 16, 2002 against defendants WPH Midtown Associates, Hart Hotels, Inc.,

Shamrock Security, Inc., Earl Perrin, the City of Buffalo, the Buffalo Police Department and

various officers of the Buffalo Police Department.  (Docket ## 1, 33).  Pursuant to 28 U.S.C.

§ 636(c), the parties have consented to have a United States magistrate judge conduct all further

proceedings in this case, including the entry of final judgment.  (Docket # 45).  Currently before

this Court are two separate motions for summary judgment, the first filed by defendants WPH

Midtown Associates and Hart Hotels, Inc. (Docket # 101) and the second filed by defendants

Shamrock Security, Inc. and Earl Perrin (Docket # 120).  Plaintiffs oppose both motions.

## BACKGROUND

The following facts are undisputed except where otherwise noted.  (*See* Docket

## 33, 104, 105, 111, 122, 123, 124, 129).  Defendants WPH Midtown Associates and Hart

Hotels, Inc. (collectively, "the Hart Hotel defendants") are the owner and operator, respectively,

of the Holiday Inn hotel located at 629 Delaware Avenue, Buffalo, New York.  Prior to the

events giving rise to this lawsuit, the Hart Hotel defendants had contracted with defendant

Shamrock Security, Inc. ("Shamrock") to provide security services for the Holiday Inn.

Shamrock is owned and managed by Edward Cotter, who was an officer with the Buffalo Police

Department at all times relevant to this litigation.  Cotter's practice was to hire only active police

officers to serve as security guards in their off-duty hours, and defendant Earl Perrin ("Perrin")

was one of those officers hired by Shamrock as a security guard.

On October 21, 2000, while Perrin was working his scheduled shift as a Buffalo

police officer, Shamrock contacted him to request that he work the overnight security shift at the

Holiday Inn.  Perrin agreed to do so, but did not have a change of clothing with him.  At the

conclusion of his police shift, Perrin reported directly to the Holiday Inn and removed certain

portions of his police uniform, such as his hat and utility belt.  Perrin wore the remainder of his

police uniform and carried his firearm in a holster during his security shift at the hotel.

That night plaintiffs Dean and Horowitz were guests of the hotel, assigned to

room 618.  Earlier that evening, Dean and Horowitz had attended a concert in Buffalo and then

had spent the late night and early morning hours in the Buffalo area.  Sometime after 4:00 a.m.,

on October 22nd, they hailed a taxi and returned to the hotel.  Plaintiffs allege that when they

returned to the hotel, the lobby was empty and the front desk was unattended.  Defendants

maintain that the front desk was staffed throughout the night.

Shortly after plaintiffs returned to the hotel, hotel staff received complaints about

excessive noise coming from room 618.  The front desk manager, Carol Bonner ("Bonner"),

notified Perrin of the disturbance and asked him to investigate.

Plaintiffs allege that not long after they retired to their room, someone arrived

outside their door, began to yell, pound the door and attempt to kick it in.  Plaintiffs secured the

door and looked through the peephole into the hallway.  They observed a man who resembled the

driver of the taxi that had driven them to the hotel.  According to plaintiffs, the man beat upon

their door, demanded entry and threatened them with physical and bodily harm.  Plaintiffs yelled

through the door that they were calling the police, and the man left.  They then called 911 to

report the incident, and the dispatcher replied that officers would respond to the scene.  Plaintiffs

allege that they also called the front desk, but that their call was not answered.

A short time later, plaintiffs allege, two other individuals arrived outside their

door, demanded entry and threatened plaintiffs.  Plaintiffs did not know who they were, and they

did not identify themselves.  Only later did they learn that one of the individuals was Perrin.

Plaintiffs again called 911 and requested police assistance.

Defendants Tim Downs and Steven Malkowski, lieutenants with the Buffalo

Police Department, responded to the scene.  According to plaintiffs, they did not identify

themselves as police officers and instead joined Perrin in pounding on the door, demanding

admittance into the room and threatening plaintiffs with physical harm.  The plaintiffs again

called 911 and asked the dispatcher to confirm the badge numbers of the individuals outside the

3

hotel room.  Plaintiffs were told that could not be done.  Plaintiffs claim that they also made several calls to the front desk in an attempt to identify the persons outside their door, but that those calls also went unanswered.

All parties agree that the officers eventually released pepper spray into the room, prompting plaintiffs to open their door.  At that point, according to plaintiffs, the officers and Perrin entered the room, and Perrin punched Horowitz in the face.  The officers handcuffed and arrested both plaintiffs.

Defendants maintain that the events at issue did not transpire in the manner that plaintiffs have described.  Rather, according to them, after Perrin was directed to investigate the noise complaint for room 618, he went to plaintiffs' room and identified himself as a security guard.  He asked plaintiffs to quiet down or vacate the premises, and plaintiffs responded by challenging Perrin's representation that he was a security guard and maintaining instead that he was their taxi driver.  They refused to quiet down and began to shout obscenities and racially derogatory remarks at Perrin.  Perrin then left the area outside their room.

Perrin returned to room 618 a short time later accompanied by Bonner.  Perrin and Bonner identified themselves and requested that plaintiffs quiet down or leave.  Plaintiffs again refused to acknowledge Perrin as a security guard, continued to yell disparaging remarks and refused to leave.  Because plaintiffs ignored Perrin's and Bonner's requests to quiet down or leave voluntarily, they contacted the Buffalo Police Department to request assistance in removing plaintiffs from the hotel.[1]  Lieutenants Malkowski and Downs responded to the hotel, advised plaintiffs that the hotel wanted them to leave and asked them to open the door and leave the

---

[1]  The record is unclear whether Perrin or Bonner made the call.

hotel.  Plaintiffs refused to open the door all the way, but did eventually crack the door slightly while keeping the security latch engaged.  Although the officers displayed their police badges and uniforms to plaintiffs through the opening, plaintiffs persisted in their refusal to open the door.  Faced with plaintiffs' continued refusal to vacate the room, the officers deployed pepper spray into their room to force their exit.  Once the spray was activated, plaintiffs opened the door, and Lieutenants Malkowski and Downs entered the room and arrested them.  Perrin denies that he entered plaintiffs' hotel room or that he assisted in subduing or arresting either plaintiff.

## DISCUSSION

The Hart Hotel defendants move for judgment as a matter of law as to each of the claims asserted against them in plaintiffs' complaint.  (Docket # 101).  Perrin and Shamrock also move for summary judgment as to those claims raised against them.  (Docket # 120).  Plaintiffs oppose both motions.  (Docket ## 111, 130).

## I.  Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reaching this determination, the court must assess whether there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).

5

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219 (2d Cir. 1994).

6

## II.  The Motion Filed by the Hart Hotel Defendants

Plaintiffs' complaint asserts two causes of action against the Hart Hotel defendants.  The fifth cause of action alleges that the Hart Hotel defendants were negligent in hiring and training defendant Perrin as a security officer.  (Docket # 33).  The sixth cause of action asserts that they were "negligent, careless and reckless in failing to properly coordinate and supervise security personnel; failing to keep the front desk properly staffed, or in the alternative, to have emergency calls to the front desk routed to appropriate hotel personnel." (Docket # 33 at 117).  The Hart Hotel defendants argue that the undisputed facts concerning each claim compel judgment in their favor.  (Docket # 103).  Plaintiffs maintain that summary judgment is inappropriate because genuine issues of material fact exist as to each claim.

**A.  Negligent Hiring, Training and Supervision:**  Turning first to plaintiffs' negligent hiring claim, it is premised upon the assertion that the Hart Hotel defendants "knew, or in the exercise of reasonable care should have known, that [Earl Perrin] had a vicious temperament and did not possess the temperament and psychological makeup to perform security work in a professional and competent manner."  (Docket # 33 at ¶ 103).  According to defendants, this claim must be dismissed because (1) Perrin was not hired and employed by the hotel, but by an independent contractor, defendant Shamrock Security, and (2) plaintiffs have offered no evidence to demonstrate or even suggest that the hotel knew or should have known of Perrin's alleged vicious temperament.  (Docket # 103).

Under New York law, which applies to plaintiffs' common law negligence claim, an employer who hires an independent contractor is generally not liable for the torts of the independent contractor or its employees.  *Rosenberg v. Equitable Life Assurance Soc'y of the*

*United States*, 79 N.Y.2d 663, 668 (1992) (citations omitted).  *See also Bellere v. Gerics*, 304

A.D.2d 687 (N.Y. App. Div. 2003); *Maristany v. Patient Support Servs., Inc.*, 264 A.D.2d 302

(N.Y. App. Div. 1999); *Zelen v. City of Saratoga Springs*, 187 A.D.2d 818, 819-20 (N.Y. App.

Div. 1992).  This principle derives from the recognition that "one who employs an independent

contractor has no right to control the manner in which the work is to be done and, thus, the risk

of loss is more sensibly placed on the contractor."  *Zedda v. Albert*, 233 A.D.2d 497, 498 (N.Y.

App. Div. 1996) (citing *Feliberty v. Damon*, 72 N.Y.2d 112, 118 (1988)).  For this reason,

determination of whether a particular individual is an employee or independent contractor

requires consideration of the degree of control the employer has over the "methods and means by

which the work is to be done."  *Harjes v. Parisio*, 1 A.D.3d 680, 680-81 (N.Y. App. Div. 2003);

*see also Murphy v. Guilford Mills, Inc.*, 2005 WL 957333, *4 (S.D.N.Y. 2005).

   This general rule permits various exceptions, certain of which plaintiffs invoke in

an effort to impose liability on the Hart Hotel defendants for Perrin's allegedly assaultive

conduct.  *See Kleeman v. Rheingold*, 81 N.Y.2d 270, 274 (1993) ("negligence of the employer in

selecting, instructing or supervising the contractor" constitutes one "basic categor[y]" of

exceptions).  First, under a theory of negligent hire, an employer may be liable for the tortious

conduct of an independent contractor where the employer "knew or should have known of the

contractor's propensity for the conduct which caused the injury."  *Atlantic Container Line AB v.*

*Aref Hassan Abul, Inc.*, 281 F. Supp. 2d 457, 466 (N.D.N.Y. 2003) (quoting *Bellere v. Gerics*,

304 A.D.2d at 688); *see also Maristany v. Patient Support Servs., Inc.*, 264 A.D.2d at 303

("cases finding employers liable for negligent hiring have done so only in very specific

circumstances").  "Because 'an employer has the right to rely on the supposed qualifications and

good character of the contractor, and is not bound to anticipate misconduct on the contractor's part, the employer is not liable on the ground of his having employed an incompetent or otherwise unsuitable contractor unless it also appears that the employer either knew, or in the exercise of reasonable care might have ascertained, that the contractor was not properly qualified to undertake the work.'" *Atlantic Container Line AB v. Aref Hassan Abul, Inc.*, 281 F. Supp. 2d at 466 (quoting *Maristany*, 264 A.D.2d at 303).

In this case, the Hart Hotel defendants did not hire Perrin; rather, the hotel hired Shamrock as an independent contractor to provide security at the Holiday Inn. No evidence has been offered – nor even any argument advanced – by plaintiffs that Shamrock was an incompetent or unqualified security company. Rather, plaintiffs contend that Perrin, who was hired and whose terms of employment were controlled by Shamrock, was an incompetent and unqualified security guard (by virtue of his "vicious temperament"), who should not have been hired by Shamrock. They further argue that the Hart Hotel defendants knew or should have known of his violent and ill-suited temperament and should not have permitted him to work as a guard at the hotel.

The record before this Court is absolutely devoid of any evidence raising a triable issue of fact whether the Hart Hotel defendants knew or should have know of Perrin's alleged disposition. Indeed, defendants have submitted an affidavit of Carol Bonner, the sales manager who was on duty at the Holiday Inn during the night of the incident, affirming that she was unaware of any misconduct by either Perrin or Shamrock and that

> [a]s Shamrock only employed off-duty police officers, [she] had no reason to believe that the security guards provided would not be

> qualified and trained to perform the tasks associated with hotel
> security, including removing unruly guests from the premises.

(Docket # 104 at ¶¶ 15-16).  At this stage of the litigation, in which discovery has been

completed and dispositive motions are pending, plaintiffs must put forward more than

speculative assertions unaccompanied by specific facts in order to defeat a properly supported

motion for summary judgment.  *See* Fed. R. Civ. P. 56(e)(2); *Colon v. Coughlin*, 58 F.3d at 872.

That, they have not done.

At most, plaintiffs have alleged through an attorney's affidavit that Perrin's

disciplinary record with the Buffalo Police Department "shows many prior complaints of use of

excessive force and two affirmative misconduct determinations."  (Docket # 111 at ¶ 23).  *See*

*Travis v. United Health Servs. Hosp., Inc.*, 23 A.D.3d 884, 885 (N.Y. App. Div. 2005)

(attorney's affidavit insufficient to raise factual issue concerning negligent hiring and supervision

claim).  They have not identified any facts to suggest that Bonner or any other hotel

representative knew or should have known of Perrin's "disciplinary record."  *See Doe v. Whitney*,

8 A.D.3d 610, 611 (N.Y. App. Div. 2004) ("plaintiffs failed to raise a triable issue of fact

showing that [defendant school] was aware of facts that would have led a reasonably prudent

person to further investigate [defendant teacher]").  Moreover, the portions of the disciplinary

record submitted by counsel concerning the "two affirmative misconduct determinations" show

that they relate to incidents that *post*-date the events at issue in this case.  These after-the-fact

incidents, even had the Hart Hotel defendants known of them, obviously cannot be used as

evidence to impeach their earlier hiring decision.  *See Day v. J. Vlachos Hellenic Serv. Station,*

*Inc.*, 2 A.D.3d 482, 483 (N.Y. App. Div. 2003) ("the plaintiff failed to raise a triable issue that a

routine background check would have revealed a propensity towards violence on the part of [the employee]").

Nor have plaintiffs raised a triable issue of fact concerning their claims of negligent training by the Hart Hotel defendants.  It is uncontroverted that at the time Shamrock hired Perrin as a security guard, Perrin was employed full-time as a police officer with the Buffalo Police Department.  He had completed the police department's training program, which included a six-month training course at the department's academy.  (Docket # 102, Ex. I at 10, Ex. J at 6-7).  In addition, before Perrin commenced employment at the Holiday Inn, the owner of Shamrock, Edward Cotter, provided on-site instruction to him concerning his job responsibilities at the hotel, including his duty to respond to complaints of disruptive guests.  (Docket # 102, Ex. I at 10-11, 24-27).  Considering this record, I reject plaintiffs' bald assertion that the hotel's failure to provide specific training to an experienced and trained city police officer concerning how to deal with unruly hotel guests constitutes a triable claim of negligence.

Plaintiffs also seek to invoke the negligent supervision exception to the general rule shielding an employer from liability for the torts of its independent contractor.  *See Kleeman v. Rheingold*, 81 N.Y.2d at 274; *Maristany*, 264 A.D.2d at 302-03.  This exception may be relied upon to impose liability on the employer where the employer interfered with the contractor's work to such a degree that the employer actually controlled and actively participated in the manner by which the contractor performed his work.  *See, e.g.*, *Zelen v. City of Saratoga Springs*, 187 A.D.2d at 820; *Wright v. Esplanade Gardens*, 150 A.D.2d 197, 198 (N.Y. App. Div. 1989).  *See also Arcure v. Annie Liebovitz Studios, Inc.*, 2001 WL 262736, *2 (S.D.N.Y. 2001) (under New York law, "an employer can be liable for the tort of an independent contractor if the

11

employer directed the act from which the injury resulted or took an affirmative, active part in its commission") (internal quotation omitted).  "The mere retention of general supervisory powers over the acts of the independent contractor will not impose liability."  *Wright v. Esplanade Gardens*, 150 A.D.2d at 198.

Plaintiffs contend that Bonner's participation in the events at issue raise a triable issue of fact concerning their negligent supervision claim.  Specifically, they argue that "Bonner not only accompanied Earl Perrin to the scene of the incident, but she took control of the incident . . . [by] ask[ing] [p]laintiffs to vacate the premises and t[elling] [p]laintiffs that she was calling the police when they allegedly refused to vacate the premises."  (Docket # 111-9 at 3). By contrast, Bonner's affidavit affirms that, as the hotel's front desk manager, she "had only general supervisory tasks relating to Shamrock's employees," namely, directing the guards to respond to guest or staff complaints and, in certain circumstances, to remove guests.  (Docket # 104 at ¶¶ 6, 8).  According to Bonner, at the time of the incident at issue, although the hotel had a policy to request guests to leave if they did not comply after the second warning, she did not control the manner in which the security guards responded to complaints or to the hotel's instruction that they be removed from the premises.  (*Id.* at ¶ 8).  Bonner states that on the night of October 22, 2000, she directed Perrin to respond to complaints of noise from plaintiffs' room, accompanied him to their room and, when plaintiffs did not quiet down, advised them that the police would be contacted to assist with their removal.  (*Id.* at ¶¶ 9-11).

New York caselaw draws a critical distinction between direction by the employer as to the work to be performed by an independent contractor, on the one hand, and control over the "method and means" of the performance of that work, on the other.  *See Murphy v. Guilford*

12

*Mills, Inc.*, 2005 WL 957333 at *5 (collecting New York cases).  That an employer engaged in

the former is not sufficient to give rise to a negligent supervision claim, while its interference

with the latter will.  *Id.*  In this case, Bonner's directions to Perrin to respond to a complaint of

noise from plaintiffs' room and later to have plaintiffs removed from the hotel are no more than

instructions concerning the work to be performed.  My review of the record reflects no evidence,

however, that Bonner directed, controlled or interfered with the manner in which Perrin

performed those tasks.  The simple fact that Bonner accompanied Perrin to the room and, as the

night manager of the hotel, instructed plaintiffs, as guests of the hotel, that the police would be

contacted to assist in their removal does not give rise to a triable issue of fact as to negligent

supervision.

   This conclusion is consistent with the determination made by the Appellate

Division of the New York State Supreme Court in a case presenting facts similar to those before

this Court.  In *Vargas v. Beer Garden, Inc.*, 15 A.D.3d 277 (N.Y. App. Div. 2005), the court

affirmed judgment for the defendant nightclub in a negligence action brought by a plaintiff who

was injured during an assault by a guard employed by a security company hired by the club.  The

court observed:

> Under no reasonable view of the evidence could a jury find the
> nightclub exercised sufficient control over the security guards on
> its premises to render it their special employer (*see Thompson v.
> Grumman Aerospace Corp.*, 78 N.Y.2d 553, 557-58 (1991)).  It
> does not avail plaintiff that the nightclub decided the number of
> guards needed on a particular night and where on its premises the
> guards should be posted at any given time, and also required that
> the guards not carry weapons and never fight back with patrons or
> people on the street and thereby could be said to have given them
> instructions relating to the manner in which they performed their
> work.  The same instructions were also given to the guards by their

> general employer, third-party defendant security company, an
> independent contractor in the business of providing security guards
> to the hotel and entertainment industry, which retained exclusive
> control over the guards' hiring and firing, wages, work hours and
> work assignments (*compare Urena v. Pace Univ.*, 1 A.D.3d 208
> (N.Y. App. Div. 2003)).

*Id.* at 278.  In this case, as in *Vargas*, the security company controlled the terms of Perrin's

employment as a guard and instructed him as to the means and manner of performing his job.

In sum, I find that plaintiffs have failed to raise triable issues of fact as to their

claims against the Hart Hotel defendants for negligent hiring, training or supervision.  The Hart

Hotels defendants' motion for summary judgment on these claims is therefore granted.

**B.  Inadequate Staffing:**  In addition to negligent supervision of Perrin, the sixth

claim in plaintiffs' complaint alleges that the Hart Hotel defendants were negligent in "failing to

keep the front desk properly staffed, or in the alternative, to have emergency calls to the front

desk routed to appropriate hotel personnel."  (Docket # 33 at ¶ 117).  Plaintiffs assert that on the

night in question, they tried to telephone the front desk in order to identify the person banging on

their door, but that the desk was not staffed and their calls were unanswered.  (*Id.* at ¶¶ 115-16).

The Hart Hotel defendants maintain that this claim should be dismissed.

Although defendants dispute that the front desk was not staffed, that dispute, if

material to plaintiffs' claim, would require resolution by a jury.  I do not find that it is, however,

and conclude that even if the front desk had not been staffed, that fact is not sufficient to

establish a negligence claim.

To prove a claim of negligence, plaintiffs must demonstrate:  (1) the existence of

a duty of care owed by the defendants to the plaintiffs; (2) a breach of that duty; and, (3) an injury

proximately resulting from that failure. *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) ("[t]o sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as the proximate result of that breach"). The first element of a negligence claim – the existence of a duty of care – requires "a relationship between ... two parties such that society imposes an obligation on one to protect the other from an unreasonable risk of harm." *Stanford v. Kuwait Airways Corp.*, 89 F.3d 117, 122 (2d Cir. 1996). Unlike questions of foreseeability and causation, the determination of the existence and scope of a specific duty is a "legal, policy-laden declaration reserved for [j]udges." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994) ("the existence of a duty . . . necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty").

Settled law recognizes that innkeepers have a duty to exercise reasonable care to protect their guests from "reasonably anticipated dangers." *Lee v. Durow's Rest., Inc.*, 238 A.D.2d 384 (N.Y. App. Div. 1997). This duty does not require that they be insurers of their guests' safety, *Silver v. Sheraton-Smithtown Inn*, 121 A.D.2d 711, 712 (N.Y. App. Div. 1986) ("although innkeepers are required to exercise reasonable care in the protection of their patrons, they cannot be held to be insurers of the safety of those patrons"), but does require them to exercise ordinary reasonable care to provide adequate security to protect guests against criminal acts, "particularly where the occurrence of criminal activity on the premises was reasonably foreseeable." *Kahane v. Marriott Hotel Corp.*, 249 A.D.2d 164, 165 (N.Y. App. Div. 1998); *see*

*also Kukla v. Syfus Leasing Corp.*, 928 F. Supp. 1328, 1334 (S.D.N.Y. 1996) (collecting New York cases); *Dean v. Hotel Greenwich Corp.*, 21 Misc. 2d 702, 704 (N.Y. Sup. Ct. 1959) ("the injury must be the proximate result of some negligence or failure of duty on the part of the [hotel] and [. . .] the danger to be apprehended must have been one that was reasonably foreseeable") (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339 (1928)).

In this case, plaintiffs maintain that their injuries were caused by Perrin and officers with the Buffalo Police Department when they forcibly entered their hotel room, assaulted them and took them into custody.  Plaintiffs argue that their injuries could have been avoided had a hotel employee answered their telephone call to the front desk and confirmed that the individual outside their room was a security officer.  In order to establish liability under this theory, plaintiffs must demonstrate that the Hart Hotel defendants had a duty to its guests to staff the front desk throughout the night (or to route those calls to an on-duty employee) and that the failure to do so was the proximate cause of plaintiffs' injuries.  *See Becker v. Club Las Velas*, 1994 WL 376016, *5 (S.D.N.Y. 1994), *aff'd*, 101 F.3d 684 (2d Cir. 1996).  The facts construed in plaintiffs' favor do not satisfy this burden.

Although it is within the province of the court to find that a hotel owed a duty of care to its guests, determination of whether the hotel satisfied or breached that duty as to a particular guest is a question of fact for the jury.  *See Gonzalez v. Caballero*, 2008 WL 3919404, *3 (S.D.N.Y. 2008) ("Once the court has determined the existence of a duty of care, it is then the factfinder's job to determine whether the duty was breached and, if so, whether the breach was the proximate cause of plaintiff's injury") (citing *Palka v. Servicemaster Mgmt. Serv. Corp.*, 83 N.Y.2d at 585; *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215-16 (2d Cir. 2002)).

16

Thus, I cannot conclude as a matter of law whether the Hart Hotel defendants' duty to exercise reasonable care to protect its patrons encompassed the obligation to staff the front desk on a twenty-four hour basis or to answer every call to the front desk.  The hotel provided its guests with a variety of safety precautions, such as working doors and locks, peepholes, telephones with which to contact emergency services and security guard services provided through Shamrock Security.  Whether these safety precautions were adequate to satisfy the Hart Hotel defendants' duty of care, however, is a question of fact that cannot be determined at this time.  *See Jenkins v. Ehmer*, 272 A.D.2d 976, 977 (N.Y. App. Div. 2000) ("What safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury") (quoting *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520 n.8 (1980)).

Proximate cause, by contrast, is an element of plaintiffs' negligence claim as to which I find that they have presented no triable issue of fact.  The record reveals that plaintiffs were able to and did call 911 to speak with a dispatcher concerning the individuals at their door, who confirmed that officers had been dispatched to their room.  Although plaintiffs now claim that they would have opened their hotel door before the officers resorted to pepper spray had they been able to confirm with hotel staff the identities of the individuals in the hall, such speculative and self-serving assertions are insufficient to defeat a motion for summary judgment.  *See Colarossi v. University of Rochester*, 2 N.Y.3d 773, 774 (2004) ("[i]n opposition to defendant's prima facie showing of entitlement to summary judgment, plaintiff presented no evidence other than mere conclusions, expressions of hope or unsubstantiated allegations that the alleged insufficient security and lighting in the fraternity quad were a proximate cause of the shooting"); *Curcio v. East Coast Hoops, Inc.*, 24 A.D.3d 997, 998 (N.Y. App. Div. 2005) ("[g]iven the

17

spontaneous and unpredictable nature of the incident, plaintiff's assertions that security could have prevented the attack and that the visible presence of security would have quelled the situation are speculative").

Accordingly, because I find that plaintiffs have failed to raise a triable issue of fact that the Hart Hotel defendants' failure to answer plaintiffs' calls to the front desk was a proximate cause of their injuries, I grant summary judgment to the Hart Hotel defendants on the sixth cause of action.


**III.  The Motion Filed by Shamrock and Perrin**

In the second motion before this Court, defendants Perrin and Shamrock seek an order granting summary judgment in their favor on all claims against them.  (Docket # 120). Specifically, Perrin moves for summary judgment on plaintiffs' first and second causes of action, asserting claims against him under 42 U.S.C. § 1983.  Shamrock seeks judgment in its favor on plaintiffs' fifth, sixth, ninth and tenth causes of action, asserting claims for negligence and vicarious liability.  (Docket # 120).

**A.  Claims Against Perrin:**  The first and second causes of action in plaintiffs' complaint assert Section 1983 claims.  In the first, plaintiffs allege that Perrin and the other officers violated their constitutional rights by subjecting them to excessive force during their arrest.  The second cause of action alleges that Perrin and the other officers unlawfully arrested them without probable cause.  (Docket # 33).  Perrin argues that summary judgment is appropriate as to both claims because he was not acting under color of law – an element of proof

18

required to establish a claim under Section 1983 – and because he did not participate in plaintiffs' arrest.  (Docket # 125).

Section 1983 permits actions at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  To establish a claim under Section 1983, a plaintiff must satisfy two essential elements:  first, that the defendant acted under color of state law; and, second, that as a result of the defendant's actions, the plaintiffs' constitutional rights or privileges were violated.  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed under authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation omitted).  *See also Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) ("defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State") (quoting *West v. Atkins*, 487 U.S. at 49-50), *cert. denied*, 525 U.S. 823 (1998).  A person may also be found to act under color of law when he acts under pretense of law.  *Screws v. United States*, 325 U.S. 91, 111 (1945).  *See Pitchell v. Callen*, 13 F.3d 545, 548 (2d Cir. 1994) ("liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent authority of the police department"); *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 331 (S.D.N.Y. 2001) ("[o]ne who lacks actual authority nonetheless acts under color of state law if he purports to act according to official power").

19

The under color of law requirement, however, forecloses actions based upon "merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). No "bright line" test exists to determine whether an officer's actions constitute "personal pursuits" or activities undertaken pursuant to color of law. *Pitchell v. Callen*, 13 F.3d at 548. Principal consideration should be given to the nature of the officer's actions, rather than his on- or off-duty status. *Id.*

Perrin disputes that he may be held liable under Section 1983 because he was working as a private security guard, and not as a City of Buffalo police officer, at the time the events at issue occurred. Perrin further argues that even if he could be said to have acted "under color of law," he did not take any action to participate or assist in plaintiffs' arrest and therefore did not violate their constitutional rights. (Docket # 125). Plaintiffs counter that questions of material fact exist as to each tenet of Perrin's argument. I agree with plaintiffs.

Taking Perrin's latter contention first, I easily reject his assertion that the record clearly demonstrates that he did not participate in plaintiffs' arrest. In their complaint, plaintiffs allege that Perrin entered their room and struck Horowitz in the head several times, causing injury. (Docket # 33 at ¶¶ 42-44). Those allegations are supported by the deposition testimony of one of the defendants, Lieutenant Timothy Downs. Specifically, Downs testified as follows concerning the events at issue:

> Counsel:   Why did you have to forcibly subdue one of the occupants?
>
> Downs:   Well, when the pepper spray went in the room – well, I'll speak for myself, my hope was that they would leave the room, we won't have to go into the room, because, you know, pepper spray's

sometimes – you don't want to be exposed to it if
you can help it.  When the door was finally opened,
nobody came out, so we had to go into the room,
Officer or Lieutenant Malkowski went in first, he
was yelling for them to get on the floor, get on the
floor, one of your clients went on the floor
immediately and he was told to put his hands behind
his back, which I think he did, because, you know,
this is all happening very quickly, Earl Perrin went
in, I went in, one of your clients retreated to the
back of the room and had his hands up like and was
swinging his hands like that (indicating).  I think we
were trying to grab him and he didn't want to be
grabbed.

Counsel:      Flailing his arms?

Downs:        Yes, flailing his arms, and at the same point, Earl
Perrin knocked his arms away and fell back on the
bed on his back and he was grabbed, turned over,
handcuffed and then taken out of the room, down to
the elevator, taken out of the elevator and taken out
of the hotel.

* * *

Counsel:      Did you observe anyone strike either of the
occupants of the room that morning?

Downs:        The one, one of your clients got hit, Earl Perrin tried
to knock down the flailing arms and he caught the
guy in the arm and he must have caught him in the
face at the same time, because after he was
handcuffed and turned over, he had a bloody nose,
blood right here on his face (indicating).

Counsel:      . . . . Can you describe the full extent of the contact
that you observed between Officer Perrin and Aaron
Horowitz that morning?

Downs:        Well, like I said, it happened very quick, he backed
up, he started flailing his arms, I think he was,
because Earl was trying to grab him, I think he was

21

> trying to keep from having his arms grabbed.  In the
> case of doing that, Earl swatted his arms away.  I
> didn't see him specifically hit him in the face.  I
> know he caught him in the arms, his arms went
> down, when he must have brushed his face, caught
> him in the face with the same blow.

(Docket # 132-7 at 25-26, 33-34).

Downs's testimony sharply contradicts Perrin's assertion that he did not enter plaintiffs' hotel room or assist in their arrest.  According to Downs, Perrin not only entered the room, but also subdued Horowitz and, in the course of which, caused him injury.  Downs's sworn testimony obviously gives rise to questions of material fact about Perrin's representations that must be determined by the jury.

Turning now to Perrin's other contention – that he was not acting under color of law – I conclude that questions of material fact exist as to that issue as well.  In fact, Perrin's own affidavit offered in support of this motion contributes to those questions.  Perrin affirms that during his interactions with plaintiffs, he was clothed in his official police uniform and carrying his police firearm.  (Docket # 122 at ¶¶ 9-10).  Perrin also recalls that he attempted to persuade plaintiffs to open their door by identifying himself as an off-duty police officer and displaying the Buffalo Police Department shoulder patch on his uniform shirt.  (Perrin Aff. at ¶ 15).  Moreover, although Perrin disagrees, I have found that disputes of material fact exist as to whether Perrin entered plaintiffs' hotel room with the on-duty police officers, who were Perrin's colleagues on the force, and assisted in subduing and arresting plaintiffs.

On this record, I find that the jury must determine the exact nature of Perrin's representations to and actions towards plaintiffs, as well as the reasonable inferences to be drawn

therefrom about the authority under which Perrin was acting.  *See, e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (off-duty officer acted under color of law when he identified himself as a police officer and used his service weapon); *Rivera v. La Porte*, 896 F.2d 691, 695 (2d Cir. 1990) ("off-duty status of an arresting officer does not mean that he is not acting under color of law").  *See also Swiecicki v. Delgado*, 463 F.3d 489, 496 (6th Cir. 2006) ("[r]elevant considerations [in determining whether off-duty officer was acting under color of law] include whether the officer flashed a badge, identified himself as an officer, or arrested (or threatened to arrest) someone"); *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) ("even though [defendant] was working off duty as a security guard, she was acting under color of state law: she was wearing a police uniform, ordered [plaintiff] repeatedly to stop, and sought to arrest him"); *Watkins v. Oaklawn Jockey Club*, 183 F.2d 440, 443 (8th Cir. 1950) (upholding court's determination after trial that off-duty police officer did not act under color of law when he ejected plaintiff from racetrack, noting that officer did not tell plaintiff he was under arrest or use any force to effect ejection); *Jones v. Wet Seal Retail, Inc.*, 519 F. Supp. 2d 1164, 1170-71 (D. Kan. 2007) (fact that off-duty officer working as a security guard was wearing police uniform is not sufficient to satisfy "under color of law" element in absence of allegations of collusion or joint action between off-duty officer and on-duty officer who arrived at the scene).

Here, plaintiffs' assertion that Perrin acted under color of law to violate their constitutional rights is not premised solely on the fact that Perrin was wearing his police uniform and badge.  Rather, it is premised upon the actions that he allegedly took to accompany the on-duty officers into plaintiffs' room and physically subdue Horowitz so that he could be handcuffed.  (*See* Docket # 130 at 5).  These allegations, which are vigorously disputed by

Perrin, nonetheless raise jury questions about whether Perrin's actions amounted to a seizure by

him under color of law, *see Swiecicki v. Delgado*, 463 F.3d at 497 (guard's actions in "formally

plac[ing] plaintiff under arrest, wrestl[ing] him to the ground using the arm-bar technique, and

attempt[ing] to handcuff him . . . were clearly carried out with the authority of state law")

(internal quotations omitted), or at least amounted to a joint seizure by him and other officers

under color of law, *see Jones v. Wet Seal Retail, Inc.*, 519 F. Supp. 2d at 1170-71.  Accordingly, I

deny Perrin's motion for summary judgment on the Section 1983 claims against him.

   **B.  Claims Against Shamrock:**  Shamrock moves for summary judgment on all

four of the claims asserted against it.  The first two claims – the fifth and sixth causes of action –

assert negligence claims against Shamrock arising from the hiring, training and supervision of

Perrin and its failure to provide hotel guests with the means to make direct contact with on-duty

security guards.  Plaintiffs' remaining two claims assert vicarious liability against Shamrock for

torts allegedly committed by Perrin, namely, the intentional infliction of emotional harm (ninth

cause of action) and assault and battery (tenth cause of action).  (Docket # 120).

   **1.  Negligence Claims:**  As with their claims against the Hart Hotel

defendants, plaintiffs' fifth claim alleges that Shamrock was "negligent in the hiring of defendant

Earl Perrin in that [it] knew, or in the exercise of reasonable care should have known, that said

agent had a vicious temperament and did not possess the temperament and psychological makeup

to perform security work in a professional and competent manner."  (Docket # 33 at ¶ 107).  That

claim likewise alleges that Shamrock was negligent in the training of Perrin "in that [it] failed to

train [Perrin] in the proper techniques of investigation and the handling of allegedly unruly

customers, and the proper techniques of arresting and detaining suspects."  (*Id.* at ¶ 110).  In their

sixth claim, plaintiffs allege that Shamrock negligently failed to supervise Perrin and failed to provide hotel guests with a means to communicate directly with security guards. (*Id.* at ¶ 118).

The critical question in a negligent hiring and supervision claim is whether the employer knew or should have known of the employee's propensity to commit the alleged acts. *Travis v. United Health Servs. Hospital, Inc.*, 23 A.D.3d at 841 ("[a] claim based on negligent hiring and supervision requires a showing that defendant knew of the employee's propensity to commit the alleged acts or that defendant should have known of such propensity had it conducted an adequate hiring procedure") (internal quotation and citations omitted). *Doe v. Rohan*, 17 A.D.3d 509, 512 (N.Y. App. Div. 2005) ("a necessary element of . . . causes of action [for negligent hiring, retention and supervision] is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury"). In an effort to prove that it did not know of any problems with Perrin's disposition, Shamrock has submitted the affidavit of its owner and president, Edward Cotter, describing his familiarity with Perrin and his work at the time he was hired by Shamrock. Plaintiffs seek to rebut Cotter's assertions by challenging the adequacy of his hiring practices.

Specifically, Cotter affirms that when he hired Perrin as a security guard in 1997, both he and Perrin were officers with the Buffalo Police Department. (Docket # 123 at ¶ 9). Cotter's practice at the time was to hire active police officers to work as security guards during their off-duty hours. (*Id.* at ¶ 14). Based upon Cotter's own experience as a Buffalo Police Department officer, he was familiar with "the rigorous training received by police officers both in the academy and throughout their professional careers" and believed that it adequately prepared any officer to work as a private security guard. (*Id.* at ¶ 9).

25

With respect to his decision to hire Perrin in particular, Cotter had personally observed him "in action, both on the streets and in the courtroom" and had been impressed with his "conduct, demeanor, ability to effectively interact with people, professionalism and overall character." (*Id.* at ¶ 7). According to Cotter, at the time he hired Perrin in 1997, he was unaware of any reason to doubt Perrin's competence or suitability as a security officer. (*Id.*). Nor did he observe any behavior or learn of any reliable information in the three years prior to the 2000 incident at issue to suggest that Perrin had violent propensities or other traits that could compromise his ability to work effectively as a security guard. (*Id.* at ¶ 8).

Plaintiffs do not directly dispute Cotter's assertions concerning his familiarity with Perrin and his experience and training as a police officer; rather, they seek to raise a triable issue of fact as to their negligent hiring claim by challenging Cotter's failure to "engage in any significant independent investigation of [Perrin's] qualifications or background." (Docket # 130 at 6). According to plaintiffs' attorney, such an investigation would have revealed "numerous open cases and complaints against [d]efendant Perrin, more than half of them involving use of force, dating back to February 1994" (*id.* at 5), as well as two sustained complaints of improper use of force (Docket # 129 at ¶ 34). This argument is insufficient to defeat summary judgment for a variety of reasons.

First, plaintiffs have not demonstrated, or raised a triable issue of fact concerning, their contention that Shamrock had a duty to conduct a "significant independent investigation" of Perrin before hiring him. *See Doe v. Whitney*, 8 A.D.3d at 612 ("There is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee") (quoting

26

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 163 (N.Y. App. Div.), *cert. denied*, 522 U.S. 967 (1997)).  At most, they allege in their memorandum of law that "[i]t is security industry practice to request privacy/human rights law waivers of prospective employees for the purpose of investigating all employment disciplinary records."  (Docket # 130 at 6).  This bald assertion of commonly-accepted practice in the security industry is unaccompanied by any sworn statements of any individuals with knowledge of the security industry.  Unsupported factual assertions made only in attorney's affidavits or memoranda do not suffice to raise triable issues of fact.  *See*, *e.g.*, *Randell v. United States*, 64 F.3d 101, 109 (2d Cir. 1995) (finding attorney's unsupported assertions insufficient to defeat motion for summary judgment), *cert. denied*, 591 U.S. 815 (1996); *Goldberg v. Colonial Metal Spinning and Stamping Co., Inc.*, 1994 WL 510037, *1 (S.D.N.Y. 1994) ("an attorney's affidavit that is not based upon personal knowledge or supported by admissible evidence is insufficient to defeat a summary judgment motion"); *Prudent Publ'g Co., Inc. v. Myron Mfg. Corp*, 722 F. Supp. 17, 21 (S.D.N.Y. 1989) ("arguments or statements by counsel unsupported by the record cannot raise a genuine issue of fact requiring a trial") (citing *Beyah v. Coughlin*, 789 F.2d 986, 989-90 (2d Cir. 1986)).

In addition, plaintiffs have not raised a triable issue of fact that such an investigation would have yielded information to doubt Perrin's qualifications for the job of security guard.  While plaintiffs' memorandum of law alludes to "numerous open cases and complaints open against [d]efendant Perrin, more than half of them involving use of force, dating back to February 1994," no further detail is provided.  For example, the record before this Court does not show whether any were "open" at the time Perrin was hired.  Indeed, as discussed, *supra*, the two sustained use of force complaints post-dated not only Perrin's hiring by

27

Shamrock, but the events at issue in this litigation.  On this record, I find that plaintiffs have

failed to raise a disputed issue of material fact concerning whether Perrin's disciplinary record as

a police officer, even if it had been investigated by Shamrock, would have led a reasonable

person in Cotter's position to decline to hire Perrin.

Accordingly, I grant Shamrock's summary judgment motion on plaintiffs'

negligent hiring claim.  *See, e.g.*, *Whitney*, 8 A.D.3d at 611 (granting summary judgment to

school on negligent hiring claim where school hired employee on basis of recommendation of

board member who knew him and employee's previous employer); *Honohan v. Martin's Food of*

*South Burlington, Inc.*, 255 A.D.2d 627, 628 (N.Y. App. Div. 1998) (granting summary judgment

to employer of security guard who assaulted plaintiff after taking her into custody, finding that

(1) defendant employer made prima facie showing of entitlement to summary judgment on

negligent hiring claim where guard had prior experience in the field and employer had checked

references and had never received complaints about guard and (2) plaintiff made no showing of

employee's propensity to commit assault or that employer knew or should have know of such

propensity).

Plaintiffs' claims that Shamrock negligently failed to train and supervise Perrin

are equally unavailing.  In entirely conclusory fashion, plaintiffs posit that questions of fact exist

as to whether additional training could have prevented the incident in question.  (Docket # 130 at

6).  In contrast, Shamrock has submitted Cotter's affidavit, in which he affirms that when he first

assigned Perrin to the Holiday Inn, he personally escorted him around the hotel, identified the

areas that needed to be secured and instructed him how to do so.  (Docket # 123 at ¶ 11).  Cotter

further affirms that he never instructed Perrin to use physical bodily force in removing unwanted

guests from the hotel, but instead directed him to call on-duty police officers to remove the guests.  (*Id.* at ¶ 12).  In addition to this training, Cotter relied upon "rigorous" training that Perrin received as a Buffalo police officer.  (*Id.* at ¶ 9).  Plaintiffs have offered no evidence to cast doubt upon the adequacy of Perrin's training to equip him to address incidents involving unruly hotel guests.

Nor have plaintiffs raised any triable issues of fact concerning the adequacy of Shamrock's supervision of Perrin.  At the time of the incident involving plaintiffs, Perrin had been a Shamrock employee for approximately three years.  At no time during that three-year period did Cotter observe or learn facts to question Perrin's suitability for the position of security guard.  (*Id.* at ¶ 8).  Plaintiffs cite Cotter's ignorance of the two sustained use of force complaints against Perrin in his capacity as a Buffalo Police Department officer as evidence of Cotter's negligent supervision of Perrin.  (Docket # 130 at 8).  Again, this argument fails because the incidents occurred after the October 2000 incident involving plaintiffs.  (*See* Docket # 117).  In sum, because I find that plaintiffs have failed to offer any competent evidence to refute Cotter's assertions concerning his hiring, training and supervision of Perrin, I conclude that Shamrock is entitled to summary judgment on these claims.

Finally, I reject plaintiffs' contention that they are entitled to proceed to trial on their claims that Shamrock was negligent because it did not provide every guest of the Holiday Inn with a means by which to contact and communicate directly with its on-duty security guards. Plaintiffs concede that this claim is one of first impression under New York law.  (Docket # 130 at 6).  Unlike the well-recognized duty of care that a hotel owes to its patrons, *see Lee v. Durow's Rest., Inc.*, 238 A.D.2d at 384, this Court is unaware of any authority upon which to extend such

duty to a third party security company contracting with such hotel.  More specifically, I can find

no basis in the law from which to recognize or infer that a third-party security contractor owes a

duty of care to the guests of the hotel with which its has contracted to provide "direct channels of

communication" between the guests and the guards (particularly where the guest rooms are

equipped with working telephones by which guests may contact the hotel's front desk, as well as

the police).  Plaintiffs have alleged no facts to invoke any of the narrow exceptions to the rule

that "a contractual obligation, standing alone, will generally not give rise to tort liability in favor

of a third party."  *See Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (2002);

*Rahim v. Sottile Sec. Co.*, 32 A.D.3d 77, 80 (N.Y. App. Div. 2006) (collecting cases and noting

that "[t]he foregoing principle has been applied numerous times in actions against security

companies).

   In sum, I conclude that the specific duty of care advocated by plaintiffs – if it

should be recognized at all – should be borne by the innkeeper (the hotel) as part of its obligation

to exercise reasonable care to protect its guests.  Accordingly, I grant judgment as a matter of law

to Shamrock on plaintiffs' sixth cause of action.  *See Hamilton v. Beretta U.S.A. Corp.*, 96

N.Y.2d 222, 232 (2001) (court must determine threshold question of whether "defendant owe[s]

a legally recognized duty of care to plaintiff").  *See also Rahim v. Sottile Sec. Co.*, 32 A.D.3d at

82 (granting summary judgment to security company on negligence claim brought by

non-contracting plaintiff, finding that security company owed no duty of care to plaintiff); *Dabbs

v. Aron Sec., Inc.*, 12 A.D.3d 396, 398 (N.Y. App. Div. 2004) (same); *Gonzalez v. National

Corp. for Housing P'ships*, 255 A.D.2d 151, 152 (N.Y. App. Div. 1998) (same).

**2. Vicarious Liability:**  Shamrock also seeks summary judgment on plaintiffs' ninth and tenth causes of action, which assert vicarious liability against it for Perrin's alleged torts of intentional infliction of emotional distress (the ninth claim) and assault and battery (the tenth claim).  (*See* Docket ## 33, 120).  Plaintiffs oppose the motion.

It is well-settled under New York law that an employer may be vicariously liable for an intentional tort committed by an employee if the employee was acting within the scope of employment at the time the tort was committed.  *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979); *De Wald v. Seidenberg*, 297 N.Y. 335, 338 (1948).  *See also Adams v. New York City Transit Auth.*, 88 N.Y.2d 116, 119 (1996) ("as a general rule, employers are held vicariously liable for their employees' torts only to the extent that the underlying acts were within the scope of employment").  Vicarious liability does not arise, however, where the employee committed the tort "solely for personal motives unrelated to the furtherance of the employer's business." *Vega v. Northland Mktg. Corp.*, 289 A.D.2d 565, 566 (N.Y. App. Div. 2001) (citations omitted); *Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401, 402 (N.Y. App. Div. 1994).

As the New York Court of Appeals has explained, "[t]he modern justification for the doctrine lies in the view that the losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are more fairly allocated to the employer as a required cost of doing business." *Adams v. New York City Transit Auth.*, 88 N.Y.2d at 119 (internal quotations omitted).  Conversely, torts committed outside the scope of employment are "not part of the conduct of the employer's enterprise [and] should not be made the responsibility of the employer." *Id.* (internal quotations omitted).

31

To be held vicariously liable for the torts of its employee, the employer need not have foreseen the specific act or precise manner of injury so long as the "general type of conduct" could have been reasonably foreseen. *Riviello v. Waldron*, 47 N.Y.2d at 304; *Johnson v. Oval Pharmacy*, 165 A.D.2d 587 (N.Y. App. Div. 1991) (directing judgment as a matter of law against security company on grounds that it was vicariously liable for the shooting by its employee guard of a store customer). That the employee's conduct was undertaken negligently or contrary to the employer's instructions is insufficient to bring that conduct outside the scope of the employment. *Riviello*, 47 N.Y.2d at 302 ("no longer is an employer necessarily excused merely because his employees, acting in furtherance of his interests, exhibit human failings and perform negligently or otherwise than in an authorized manner"). Nor is it enough that the employee's passion, temper or emotions contributed to his actions. *De Wald v. Seidenberg*, 297 N.Y. at 338 (under the doctrine of vicarious liability, the employer "is justly held responsible when the servant through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another").

In determining whether an employee's action was taken within the scope of employment, courts consider the following factors:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

32

*Riviello*, 47 N.Y.2d at 303 (citations omitted).  This factually-laden determination is generally

one reserved for the jury.  *Pizzuto v. County of Nassau*, 239 F. Supp. 2d 301, 313-14 (E.D.N.Y.

2003) (citing *Rounds v. Delaware, Lackawanna & Western R.R. Co.*, 64 N.Y. 129, 137-38

(1876)).

Applying these principles to the instant case, I find that material questions of fact

exist concerning whether Perrin acted within the scope of his employment.  It is undisputed that

when the events giving rise to this action occurred, Perrin was employed by Shamrock as a

security guard and assigned by it to the Holiday Inn.  While on duty at the hotel, Perrin was

directed to investigate complaints of excessive noise relating to plaintiffs' hotel room, a

responsibility to which he had attended on other occasions, including that very night.  Without

question, Perrin's action in responding to the room and interacting with plaintiffs was within the

scope of his employment; so, too, was his action in attempting to persuade plaintiffs to vacate the

room, particularly where plaintiffs have not identified any personal motive of Perrin for the

actions he took.

Factual issues do arise, however, in determining whether Perrin's actions when

the police arrived were within the scope of his employment, and for that reason, Shamrock's

motion for summary judgment on the ninth and tenth causes of action must be denied.  *See*, *e.g.*,

*Jaccarino v. Supermarkets Gen. Corp.*, 252 A.D.2d 572 (N.Y. App. Div. 1998) ("evidence

indicating that it specifically instructed its security guards to refrain from physical contact with

customers does not compel the conclusion that, as a matter of law, the security guard in question

was acting beyond the scope of his employment when he allegedly assaulted the plaintiff").  *See*

*also Sims v. Bergamo*, 3 N.Y.2d 531, 534-35 (1957) (reversing grant of summary judgment to

33

employer, finding questions of fact as to whether employee bartender was acting within scope of

employment when he allegedly assaulted patron accused of breaking a window); *Ramos v. Jake*

*Realty Co.*, 21 A.D.3d 744, 746 (N.Y. App. Div. 2005) ("[w]hile there is no doubt that the

superintendent's resort to physical violence [at the work site] was in poor judgment, this in itself

does not absolve defendants of liability for his acts") (citations omitted). Specifically, it is for a

jury to determine the precise conduct that Perrin engaged in when the police arrived and whether

that conduct was within the scope of his employment. *See Riviello*, 47 N.Y.2d at 303 ("because

the determination whether a particular act was within the scope of the servant's employment is so

heavily dependent on factual consideration, the question is ordinarily one for the jury").

Although plaintiffs have raised a triable issue of fact as to the applicability of

vicarious liability against Shamrock, they have not done so as to their claim for punitive

damages. Punitive damages, unlike compensatory damages, are awarded to punish and deter a

wrongdoer from engaging in similar conduct in the future. *Loughry v. Lincoln First Bank, N.A.*,

67 N.Y.2d 369, 377 (1986) (citing *Walker v. Sheldon*, 10 N.Y.2d 401, 404 (1961)). "[P]unitive

damages can be imposed on an employer for the intentional wrongdoing of its employee only

where management has authorized, participated in, consented to, or ratified the conduct giving

rise to such damages, or deliberately retained the unfit servant or the wrong was in pursuance of a

recognized business system of the entity." *Id.* (citations omitted). Stated otherwise, "employer

liability [results] in punitive damages only when a superior officer in the course of employment

orders, participates in, or ratifies outrageous conduct." *Id.* (citations omitted).

Here, plaintiffs have failed to offer any evidence suggesting that Shamrock

directed or ratified Perrin's alleged assaultive conduct. Indeed, in his sworn affidavit, Cotter

34

states that he specifically instructed Perrin that he should call 911 and allow on-duty police officers to remove any guests refusing to comply with Perrin's instructions to vacate the premises.  (Cotter Aff. at ¶ 12).  Plaintiffs have offered no evidence to refute or question Cotter's representations as to the instructions he provided Perrin.  Accordingly, plaintiffs' claims for punitive damages on their ninth and tenth causes of action against Shamrock are dismissed.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment filed by defendants Hart Hotels, Inc. and WPH Midtown Associates **(Docket # 101)** are **GRANTED**.  The motion for summary judgment filed by defendant Earl Perrin **(Docket # 120)** is **DENIED**.  The motion for summary judgment filed by defendant Shamrock Security, Inc. **(Docket # 120)** is **GRANTED in PART and DENIED in PART**.  Plaintiffs' fifth and sixth causes of action are dismissed as to defendants Hart Hotels, Inc., WPH Midtown Associates and Shamrock Security, Inc.  Plaintiffs' ninth and tenth causes of action are dismissed as to defendant Shamrock Security, Inc. only to the extent that they seek awards of punitive damages.

**IT IS SO ORDERED.**

_Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September   30  , 2008